UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND


NORTHBOROUGH CAPITAL PARTNERS,   :
          Plaintiff,             :
                                 :
     v.                          :        CA 09-32 S
                                 :
PHILIP D. RAHAIM,                :
          Defendant.             :


## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

   This is an action to collect amounts due pursuant to two promissory notes.  Before the Court is the Application for Entry of Default Judgment as to Defendant Philip D. Rahaim (Doc. #6) ("Application for Entry of Default Judgment" or "Application").  The Application has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I have concluded that no hearing is necessary.  For the reasons stated below, I recommend that the Application be granted in part and denied in part.

## Facts

   Defendant Philip D. Rahaim ("Rahaim") is the principal shareholder and president of Leominster Business Center, Inc. ("Leominster"), a Massachusetts corporation.  See Complaint ¶¶ 5-6.  On May 15, 2006, Rahaim guaranteed payment of a $900,000.00 promissory note (the "First Note") executed by Leominster in favor of five lenders.  See id. ¶ 13; id., Exhibit ("Ex.") C

(First Note Guaranty). The loan was secured by a mortgage executed by Leominster on the same date. See Complaint ¶ 10. The First Note was modified on May 24, 2007, by a Loan Modification Agreement and a Note Modification Agreement. See id. ¶ 11; id., Ex. B (Loan Modification Agreement and Note Modification Agreement).[1] Rahaim signed the Loan Modification Agreement as president of Leominster and also as guarantor. See Complaint, Ex. B at 2. He signed the Note Modification Agreement as president of Leominster. See id. at 7.

Also on May 24, 2007, Rahaim additionally guaranteed payment by Leominster of a second promissory note (the "Second Note") in the amount of $100,000.00. See Complaint ¶ 17; id., Ex. E (Second Note Guaranty). The Second Note was in favor of two lenders who had participated in the earlier $900,000.00 loan. See id., Exs. A, D (Promissory Notes). This second loan was also secured by a mortgage on property owned by Leominster. See id. ¶¶ 7, 10, 14-16.

On October 3, 2008, the First Note was transferred to Plaintiff Northborough Capital Partners ("Plaintiff" or "Northborough") by an allonge executed by the five lenders. See Complaint, Ex. F (Allonge to First Note). Rahaim's guaranty of the First Note was also transferred to Plaintiff by virtue of an

---

[1] The Loan Modification Agreement is found at pages 1-6 of Exhibit B to the Complaint, and the Note Modification Agreement is found at page 7 of that exhibit.

2

assignment of the First Note Guaranty executed by the five lenders.[2]  See id., Ex. G (First Note Assignment).

The Second Note was also transferred to Plaintiff by an allonge executed by the two lenders on October 3, 2008.  See id., Ex. H (Allonge to Second Note).  Rahaim's guarantee of the Second Note was purportedly transferred to Plaintiff by virtue of an assignment of the Second Note Guaranty executed by the two lenders who made the loan.  See Complaint, Ex. I (Second Note Assignment).  However, the Second Note Assignment recites that "Seller Group 1 hereby transfers and assigns ... to Buyer ... all of Seller Group 2's right, title[,] and interest in the following [documents, one of which is the Second Note Guaranty]."  Id.  "Seller Group 2" is identified in the assignment as the two lenders who made the $100,000 loan.  Id.  The members of "Seller Group 1" are not identified.  Id.  Thus, on the face of the document, the entity purportedly transferring the Second Note Guaranty to Plaintiff is not the holder of that guaranty but another entity.

Leominster defaulted under the terms of the First Note and

---

[2] The date the First Note Guaranty was transferred to Plaintiff is not stated in the Complaint, and the First Note Assignment is undated.  See Complaint, Ex. G (First Note Assignment).  Although the First Note Assignment refers to a "Loan Sale Agreement of even date ...," id., the Loan Sale Agreement is not part of the record.  However, the First Note Assignment also refers to a "[f]orbearance [a]greement ... dated on or about March 6, 2008."  Id.  From this it can be deduced that the assignment of the First Note Guaranty to Plaintiff occurred sometime after March 6, 2008.

3

the Second Note.  See Complaint ¶ 22.  On or about October 6, 2008, Plaintiff demanded that Leominster and Rahaim pay in full the amounts due pursuant to the notes.  See id. ¶ 23.  Plaintiff subsequently sent notices of foreclosure for the properties securing the notes with a scheduled sale date of December 1, 2008.  See id. ¶ 24.  On November 26, 2008, Leominster filed a voluntary petition for bankruptcy in the Bankruptcy Court for the District of Massachusetts.  See id. ¶ 25.

As of December 18, 2008, Leominster owed Plaintiff the principal sum of $918,000.00 together with interest of $168,606.00, forbearance fees of $18,360.00, and fees, costs, and expenses of $11,604.47 on account of the First Note.  See id. ¶ 26.  As of the same date, Leominster owed Plaintiff the principal sum of $100,000.00 together with interest of $17,416.67, forbearance fees of $2,000.00, and fees, costs, and expenses of $1,480.00 on account of the Second Note.  See id. ¶ 27.

### Travel

Plaintiff filed its Complaint in this Court on January 21, 2009.  See Docket.  Rahaim was served with a copy of the Complaint and a summons at 288 Hill Street, Leominster, Massachusetts, on February 28, 2009.  See Affidavit (Doc. #8) ("Second Carlotto Aff."), Ex. B (Amended Affidavit of Service);[3]

---

[3] The Amended Return of Service, see Affidavit (Doc. #8) ("Second Carlotto Aff."), Ex. B (Amended Affidavit of Service), was filed in response to the Court's Order to Clarify Service (Doc. #7) ("Order of

see also Application at 1.  Rahaim failed to answer the Complaint or otherwise defend, see Application at 1, and on June 8, 2009, Plaintiff moved to default him, see Application to Clerk for Entry of Default as to Defendant Philip D. Rahaim (Doc. #3) ("Application for Entry of Default").  Plaintiff sent a copy of the Application for Entry of Default to Rahaim, see Amended Certification (Doc. #4), but Rahaim filed nothing in response to it, see Docket.  On June 9, 2009, the Clerk entered default against Rahaim.  See Entry of Default (Doc. #5).

Plaintiff filed the instant Application for Entry of Default Judgment on August 6, 2009.  See Docket.  The Application was referred to this Magistrate Judge on August 28, 2009.  See id. Because of a question as to Rahaim's last and usual place of abode,[4] the Court issued an Order to Clarify Service (Doc. #7) ("Order of 9/9/09") on September 9, 2009.  See Docket.  Plaintiff complied with the Order of 9/9/09 by filing the Second Carlotto

---

9/9/09").  The original Affidavit of Service (Doc. #2) stated that Rahaim had been served at his "last [and] usual place of abode ... at 288 HILL ST, WESTMINSTER MA."  Order of 9/9/09 at 1.  As this address was contradicted by the averment in the Complaint regarding Rahaim's residence, see Complaint ¶ 5, the Court ordered Plaintiff to file an affidavit setting forth the basis for the belief that on March 2, 2009 (the date service was made), Rahaim resided at the address stated in the Affidavit of Service, see Order of 9/9/09.  Plaintiff filed the requested affidavit on September 15, 2009.  See Second Carlotto Aff. The affidavit corrected the address at which Rahaim had been served (from 288 HILL STREET, WESTMINSTER, MA," Affidavit of Service, to 288 HILL STREET, LEOMINSTER, MA," Second Carlotto Aff., Ex. B) and satisfactorily explained the basis for Plaintiff's belief that the latter address was Rahaim's usual place of abode.

[4] See n.3.

5

Aff. on September 15, 2009.  See id.  Thereafter, the Court took the matter under advisement.

## Discussion

The Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).[5]  Plaintiff is a Rhode Island limited liability company with a principal place of business in Providence, Rhode Island, and Rahaim is a resident of Massachusetts.  See Complaint ¶¶ 3, 4; Second Carlotto Aff. ¶¶ 5-7.  The amount in controversy exceeds $75,000.00.  See Complaint ¶¶ 26-27.  The Court has personal jurisdiction over Rahaim as he consented to such jurisdiction by executing the First Note Guaranty and the Second Note Guaranty.  See id., Ex. C ¶ 14, Ex. E ¶ 14.  Rahaim has been served with process in accordance with Fed. R. Civ. P. 4(h), see Second Carlotto Aff.  Thus, I find that the Court has both subject matter jurisdiction and personal jurisdiction over Rahaim.

In support of the Application, Plaintiff states that:

> The Defendant was not at the time of the commencement of this action nor is the defendant now in the Military Service of the United States as defined in the Soldiers'

---

[5] 28 U.S.C. § 1332(a) provides in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> (1) citizens of different States ....

28 U.S.C. § 1332.

6

>   and Sailors' Civil Relief Act of 1940; nor is the
>   defendant an infant or incompetent.

Application at 1.  Plaintiff further states that an inquiry was made by means of a search at the Department of Defense Manpower Data Center ("DMDC") website by using Rahaim's first and last name and social security number.  Id.  The result obtained was that "the DMDC does not possess any information indicating that the individual is currently on active duty."  Id., Attachment (Military Status Report Pursuant to the Servicemembers Civil Relief Act).

Default having been entered by the Clerk against Rahaim on June 9, 2009, and no objection having been filed to the instant Application, I find that it should be granted to the extent that it seeks the entry of default judgment with respect to the amounts owed on account of the First Note.  See id. at 2.  To the extent that the Application seeks entry of default judgment with respect to the amounts owned on account of the Second Note, see id., I find that the Application should be denied as the purported assignment of the Second Note Guaranty by the holders of that guarantee to Plaintiff is deficient on its face.  As previously noted, the assignment states that the transfer of Rahaim's guarantee of the Second Note is made by "Seller Group 1," Complaint, Ex. I, but the holders of that guarantee as stated in the assignment are "Seller Group 2," id.

In recommending denial of the Application with respect to

7

the amounts owed based on the Second Note, the Court is also influenced by the fact that the Complaint fails to allege that Plaintiff is the present holder of Second Note Guaranty.  See Complaint ¶ 21.  Thus, neither the assignment itself nor the allegations of the Complaint demonstrate that Plaintiff is the present holder of the Second Note Guaranty.  Cf. Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985)("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its ... claims must be considered established as a matter of law.").  Accordingly, the Court is constrained to recommend denial of that portion of the Application which seeks the entry of default judgment with respect to amounts owed on account of the Second Note.

### Conclusion

For the reasons stated above, I recommend that the Application for Entry of Default Judgment be granted as to Count I and denied as to Count II.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d

4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
September 28, 2009